No. 89-338

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990


IN THE MATTER OF
J. F., a Youth.


APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Mineral,
The Honorable Jack L. Green, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Douglas Anderson, Missoula, Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena, Montana
George Schunk, Asst. Atty. General, Helena
M. Shaun Donovan, Mineral County Attorney, Superior,
Montana

For Amicus Curiae:

David Lambert and Teresa Demchak, National Center for
Youth Law, San Francisco, California


Submitted on Briefs: Jan. 11, 1990

Decided: February 22, 1990

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

J.F., a youth appellant, appeals from an Order of Commitment entered by the District Court of the Fourth Judicial District, Mineral County. We reverse and remand for a determination of a lesser restrictive alternative for disposition of the youth consistent with this Opinion.

This Court summarizes the issues on appeal as being whether the District Court erred in rejecting the dispositional recommendation of the Youth Placement Committee by placing the youth in a secure facility when lesser restrictive measures were available.

J.F.'s first brush with the law occurred on March 11, 1987, when J.F. was 15 years old. On that date, he was charged with burglarizing a theater in Superior, Montana. J.F. did not steal anything nor cause any damage therein. For the offense, he was placed on a six-month informal probation. On August 5, 1987, J.F. committed an act of criminal mischief. Specifically, J.F. and a friend took down and burned a Mineral County Fair street banner. Both had been drinking at the time. On September 2, 1987, he was placed on a one-year probation for the offense and ordered to pay restitution.

J.F. was apprehended while burglarizing a grocery store in Superior during the early morning hours of August 26, 1988, taking beer, chips and ice cream. J.F. is alleged to have been drinking before the incident. In response to the offense, the Mineral County Attorney filed a Petition for Adjudication of Delinquency, pursuant to § 41-5-103(13), MCA, on September 7, 1988.

On October 19, 1988, the Youth Court adjudged J.F. a delinquent youth and ordered him committed to the Department of Family Services for placement at Pine Hills School for Boys near Miles City, Montana. The commitment was suspended subject to nine

2

conditions including the requirements that J.F. enter a chemical dependency program to commence on or before November 3, 1988; that he observe a curfew to be physically present at his home no later than 10:00 p.m. on Friday and Saturday nights and 8:00 p.m. on all other nights, subject to certain exceptions; and that he be subject to all standard rules and regulations of probation. J.F. entered the Northern Montana Chemical Dependency Program in Havre, Montana, on November 3, 1988, and completed the program.

On February 12, 1989, J.F. was seen at a convenience store in Superior at 3:00 a.m. and was in possession of a can of beer. Specifically, J.F. was suspected of stealing cookies and beer. As a result, on March 6, 1989, the county attorney filed a petition for revocation of the suspended order of commitment based on violations of conditions. On April 19, 1989, a hearing was held concerning the petition. During the hearing, J.F. admitted the curfew violation. The court admonished J.F. for the incident and continued probation.

That same evening, J.F. again violated curfew and was observed in possession of a can of beer. The county attorney filed a second petition for revocation of the suspended order of commitment on April 26, 1989, in response to the violations. A hearing was held on the matter on May 17, 1989.

On June 2, 1989, the Youth Placement Committee submitted a recommendation to the court which stated that J.F. should not be placed at Pine Hills School because it does not provide an alcohol treatment program, of which J.F. is in need, and further recommended appropriate treatment whether it be in- or out-patient. On June 7, 1989, a hearing was held before the Youth Court. Witnesses at the hearing included J.F.'s present counselor, Donald Omdahl, and his probation officer, Mike McLean. Omdahl testified that J.F. has had three alcohol dependency counselors in six months and each time there was a new counselor "we basically go back to square one . . ." Omdahl also stated that because of J.F.'s age, his alcohol use and family problems contributed to his reluctance to follow the court rules. McLean testified that there

3

had been ". . . some notable progress in his self confidence" and "improvement in his overall presentation."

The Youth Court ordered that J.F. be committed to the Department of Family Services for placement at Pine Hills School. J.F. was remanded to the custody of his mother pending transportation arrangements. In its order of commitment the court found that:

> . . . the youth has willfully failed to abide by the rules of probation and the conditions upon which his commitment was previously suspended . . . as a result of his unwillingness to conform to the requirements of probation as well as his underlying offenses of burglary and criminal mischief, <u>physical confinement</u> in an appropriate facility is <u>necessary for the protection of the public and its property</u>. (Emphasis ours.)

From the order, J.F. appeals on the basis that the court erred rejecting the recommendation of the Youth Placement Committee and that the court erred in designating J.F. as a danger to the public and its property.

The issue is governed by the Montana Youth Court Act. Section 41-5-102(2), MCA, sets forth the express legislative purpose of the Act as being that of supervision, care and rehabilitation of the youth--not punishment. The disposition imposed is to be made in accord with the best interests of the child. See In the Matter of the Application of Peterson (Mont. 1989), 767 P.2d 319, 46 St.Rep. 13.

Section 41-5-523, MCA, sets forth the alternatives for disposition of a youth including:

> (1) If a youth is found to be delinquent . . . the youth court may enter its judgment making any of the following dispositions;
>
> (a) place the youth on probation;

4

(b)    commit the youth to the department if the court determines that the youth is in need of placement in other than the youth's own home; provided, however, that:

. . .

> (ii)   in the case of a delinquent youth who is determined by the court to be a serious juvenile offender, the judge may specify that the youth be <u>placed in a youth correctional facility if the judge finds that such placement is necessary for the protection of the public</u> ;

. . .

(i)    order such <u>further care, treatment</u>, evaluation, or relief that the court considers beneficial to the youth and the community . . . (Emphasis ours.)

In this case, the District Court ordered placement of J.F. in the Pine Hills School and noted without explanation in its order of commitment that such placement was "necessary for the protection of the public and its property." The petition for revocation upon which the District Court ordered confinement, was based upon the curfew violation. However, the record reflects that J.F. is in need of alcohol dependency treatment. Pine Hills School provides no such treatment and, thus, is an inappropriate setting for the youth. The District Court should have considered a lesser restrictive alternative which, under § 41-5-523(1)(i), MCA, would provide J.F. with such further care and treatment for alcohol dependency as recommended by the Youth Placement Committee.

5

Reversed and remanded for a determination after consideration of a lesser restrictive alternative for disposition of the youth, who is now eighteen years old, consistent with this Opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice Diane G. Barz dissenting.

The Youth Court did not err by ordering the youth committed to the Department of Family Services for placement at Pine Hills. In its June 7, 1989 order the court set out the following rationale:

> THE COURT HEREBY FINDS that the youth has been previously adjudicated as delinquent; that the youth has obtained inpatient chemical dependency treatment as well as outpatient counseling and that every effort has been made to address the needs and problems of this youth in a community based setting.
>
> THE COURT FURTHER FINDS that on at least three occasions the youth has willfully failed to abide by the rules of probation and the conditions upon which his commitment was previously suspended and that there is no credible evidence to believe that the youth will in the future be any more obedient to the Orders of this Court than he has been previously and that as a result of his unwillingness to conform to the requirements of probation as well as his underlying offenses of burglary and criminal mischief, physical confinement in an appropriate facility is necessary for the protection of the public and its property.

J.F. was ordered placed in Pine Hills following adjudication as a delinquent youth. Montana does not have a statute requiring that the court consider and reject less restrictive alternatives prior to commitment to a more secure facility. While these are good policies, the Montana Legislature has not chosen to enact such considerations let alone provide sufficient financial resources for such alternative placements.

There is no question that the Youth Court could have ordered the commitment to Pine Hills implemented following the burglary in

7

its October 19, 1988 order. The Youth Court suspended the execution of that order upon certain conditions which J.F. consistently failed to follow. The fact that J.F. received in-patient alcohol treatment and went through six different counselors on an outpatient basis should take care of any concern that less restrictive alternatives were not considered or attempted.

Section 41-5-523(1)(b), MCA (1989), is very clear that a court can specify that a delinquent youth be placed in a correctional facility if the youth is a serious juvenile offender and the judge finds placement necessary for the protection of the public. In the instant case the Youth Court should not be bound by the placement committee's nonspecific recommendation that the youth be placed in a treatment facility.

Finally, since J.F. has reached majority and is not eligible for any youth programs or lesser restrictive alternatives to the Pine Hills School, this appeal should be dismissed as moot.

_____
Justice

Justice R.C. McDonough joins in the foregoing dissent of Justice Diane G. Barz.

_____
Justice